**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Javeous Purnell, | No. CV-26-01693-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendant. | |

Pending before the Court is Defendant City of Phoenix's ("Defendant" or the "City") Motion to Dismiss the First Amended Complaint (Doc. 12) pursuant to Federal Rule of Civil Procedure 12(b)(6). Self-represented Plaintiff Javeous Purnell filed a Response (Doc. 13). Defendant filed a Reply (Doc. 14). The Court now rules.

## I.   BACKGROUND

### A.   Factual Allegations

Plaintiff was employed as a police recruit with the City of Phoenix Police Department. (Doc. 7 at 2). Plaintiff alleges that he was subjected to several instances of racial discrimination by a supervisor, Police Sargeant [hereinafter "G."], between April and May 2024 that forced Plaintiff to resign. (Doc. 7 at 2–3). Plaintiff specifically describes 5 racially derogatory comments allegedly made by Sgt. G. (Doc. 7 at 2–3). Plaintiff also alleges he was treated differently from his coworkers because of his race, alleging that he "was forced to clean the entire maintenance car lot alone while non-Black employees remained indoors," "was required to work for over three hours in below-freezing conditions

while non-Black employees were allowed to remain indoors and study," and "was falsely accused of misconduct and was subjected to racially derogatory implications." (Doc. 7 at 2). Plaintiff further alleges that he "repeatedly reported these incidents but was met with retaliation, forced labor, dismissal, segregation, and intimidation." (Doc. 7 at 3). Plaintiff alleges Sgt. G. "discouraged reporting by stating that no one would believe Plaintiff and that Plaintiff would have a difficult future within the department." (Doc. 7 at 3). Plaintiff alleges that this conduct "was severe, pervasive, and altered the terms, conditions, and privileges of Plaintiff's employment." (Doc. 7 at 3). Plaintiff alleges that ultimately he was "forced to resign due to intolerable working conditions, constituting constructive discharge." (Doc. 7 at 3).

### B. Procedural History

On January 23, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 1-1 at 6–8). On July 31, 2025, Plaintiff attempted to commence an action in the Maricopa County Superior Court, but the Superior Court rejected that filing for improper formatting and failure to pay the filing fee or request deferral of the fee. (Doc. 13 at 11–13). On September 2, 2025, the EEOC issued a right-to-sue letter. (Doc. 12-1 at 2). On February 10, 2026, Plaintiff filed a complaint in the Maricopa County Superior Court. (Doc. 1-1 at 5).

On March 12, 2026, Defendant removed this action to federal court. (Doc. 1). On March 18, 2026, Defendant filed a Motion to Dismiss (Doc. 4). On March 20, 2026, Plaintiff filed his First Amended Complaint ("FAC") (Doc. 7), alleging claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. (Doc. 7 at 3). As a result of the filing of an amended complaint, this Court denied Defendant's first Motion to Dismiss as moot and ordered Defendant to answer or otherwise respond to the FAC. (Doc. 8). On April 6, 2026, Defendants filed the pending Motion to Dismiss the FAC. (Doc. 12).

### II. LEGAL STANDARD

"[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege sufficient

- 2 -

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint will be dismissed for failure to state a claim if it lacks either "a cognizable legal theory or . . . sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

"All well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, the court need not accept legal conclusions couched as factual allegations, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–80.

In considering a Rule 12(b)(6) motion to dismiss, courts ordinarily may not consider evidence outside the pleadings without converting the motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice— without converting the motion to dismiss into a motion for summary judgment." *Id.*

Moreover, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (instructing that courts should "construe pro se filings liberally . . . , particularly in civil rights cases" (internal quotation marks and citation omitted)).

## III.    DISCUSSION

Plaintiff alleges disparate treatment and hostile work environment claims under

Title VII and § 1981. (Doc. 7 at 2–3). Defendant argues that Plaintiff's Title VII claim should be dismissed as untimely, and Plaintiff's § 1981 claim should be dismissed because Plaintiff has not satisfied the *Monell* standard to impose municipal liability. (Doc. 12 at 1–2).

### A.    Title VII Claim

Defendant argues that Plaintiff's Title VII claim should be dismissed as untimely. "Before a claimant can file a Title VII civil action, she must file a timely charge of discrimination with the EEOC. If the EEOC dismisses the charge, a claimant has ninety days to file a civil action. This ninety-day period is a statute of limitations." *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 383 (9th Cir. 1997) (internal citations omitted); 42 U.S.C. § 2000e-5(f)(1).

Here, Plaintiff attempted to commence an action in Maricopa County Superior Court on July 31, 2025.[1]  Plaintiff attached to his response to the motion the dismiss the email he received from the Superior Court following Plaintiff's attempted filing.  (Doc. 13 at 11–13).[2]  In that email (also dated July 31, 2025), the Superior Court informed Plaintiff that his attempted filing had been rejected.  Thus, Plaintiff knew as of July 31, 2025, that no case was filed or pending in Superior Court.

The EEOC issued the right-to-sue notice on September 2, 2025.[3] (Doc. 12-1 at 2). When receipt of a right-to-sue notice is not disputed but the actual date of receipt is unknown, the Ninth Circuit applies a three-day presumption for receipt of the right-to-sue notice. *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122, 1125–26 (9th

---

[1] The parties do not dispute that Plaintiff attempted to file documents related to his employment discrimination claims with the Maricopa County Superior Court on July 31, 2025. (Doc. 12 at 3; Doc. 13 at 5; Doc. 14 at 2). "A court may take judicial notice of undisputed matters of public record, which may include court records…." *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018); Fed. R. Evid. 201(b).

[2] The Court has taken judicial notice of this document generated by the Superior Court. *See Raygoza-Garcia*, 902 F.3d at 1001.

[3] The parties agree that the right-to-sue notice was issued on September 2, 2025. (Doc. 12 at 3 n.2; Doc. 13 at 3). Courts "may take judicial notice of records and reports of administrative bodies." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (internal quotation marks and citation omitted); Fed. R. Evid. 201(b).

- 4 -

Cir. 2007). Here, the presumption is that Plaintiff received the right-to-sue notice on September 5, 2025. Thus, the ninety-day statute of limitations to file a civil action required Plaintiff to bring this lawsuit by December 4, 2025.[4] (Doc. 12 at 3; Doc. 13 at 3).

This ninety-day statute of limitation was made clear to Plaintiff in the EEOC notice. (Doc. 12-1 at 4). Specifically, the notice references the statute of limitations nine separate times, three of which were in bold typeface. (*Id.*). Plaintiff makes no argument that he was misled or uninformed about this statute of limitations. Further, Plaintiff makes no argument that an "extraordinary circumstance" (beyond the regular requirements of filing in court) stood in the way of his timely filing.

The complaint which was removed to this Court was filed in the Maricopa County Superior Court on February 10, 2026, approximately two months after the statute of limitations expired. The Superior Court assigned that case a 2026 case number, and a February 10, 2026 original filing date. The Superior Court in no way associated the February 10, 2026 complaint with the July 31, 2025 attempted filing. The parties' dispute over whether Plaintiff's Title VII claim is timely centers on whether Plaintiff's attempted filing on July 31, 2025, equitably tolled the 90-day statute of limitations.[5] (Doc. 12 at 6; Doc. 13 at 4).

"The ninety-day period within which to file a civil action after dismissal of the charge by the EEOC is a statute of limitations subject to the doctrine of equitable tolling." *Nelmida*, 112 F.3d at 384. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S.

---

[4] The Court notes that Plaintiff's July 31, 2025 filing attempt preceded the September 2, 2025 right-to-sue notice. (Doc. 13 at 7). If Plaintiff could use July 31, 2025 as the filing date, "[a] Title VII complainant may file an action prior to receiving her right to sue letter, provided there is not evidence showing that the premature filing precluded the state from performing its administrative duties or that the defendant was prejudiced by such filing." *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 n.1 (9th Cir. 1990).

[5] Defendants also argue that Rule 15(c)(1) relation-back doctrine and Arizona's "savings" statute, A.R.S. § 12-504, do not apply to Plaintiff's July 31 filing. (Doc. 12 at 4–6). However, Plaintiff only argues that equitable tolling applies and does not dispute the inapplicability of Rule 15 or A.R.S. § 12-504. (Doc. 13 at 4, 7).

408, 418 (2005).  To be entitled to equitable tolling, Plaintiff must show "that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598–99 (9th Cir. 2020) (en banc).

"Courts take a flexible, fact-specific approach to equitable tolling." *Gibbs v. Legrand*, 767 F.3d 879, 885 (9th Cir. 2014). "A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Supermail Cargo, Inc. v. U.S.,* 68 F.3d 1204, 1206 (9th Cir. 1995) (quotation omitted).  As discussed above in footnote 2, the Court has taken judicial notice of Plaintiff's evidence that he attempted to file in Superior Court on July 31, 2025 by filing his EEOC charge.[6] The attempted July 31, 2025 filing is Plaintiff's only argument in favor of equitable tolling.

The doctrine of equitable tolling is applied sparingly. *Scholar v. Pacific Bell*, 963 F.2d 264, 267 (9th Cir. 1992); *Irwin v. Dep't of Veteran Affs.*, 498 U.S. 89, 96 (1990). However, federal courts "have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin*, 498 U.S. at 96. Here, Plaintiff alleges that the July 31, 2025 attempt was a defective pleading and, thus, equitable tolling should apply. (Doc. 13 at 2).

---

[6]  The email from Superior Court rejecting Plaintiff's July 31, 2025, attempted filing calls Plaintiff's initial filing "Equal Employment Opportunity Charge" and calls the attached PDF "ChargeOfDiscrimination.pdf." (Doc. 13 at 12).  In his response to the motion to dismiss, Plaintiff disputes the Superior Court's email's description of what Plaintiff filed and instead argues what he filed was a "complaint". (Doc. 13 at 5).  Plaintiff further argues that the Court must "construe in his favor" his alleged facts that he did not file his EEOC charge but actually a filed a complaint.  Plaintiff did not attach to his response to the motion to dismiss what he actually filed, thereby creating the issue of fact he claims must be construed in his favor. However, as discussed above, the Court has taken judicial notice of the Superior Court's rejection email as an official record of the Superior Court.  The Superior Court twice stated that what Plaintiff filed was his EEOC charge, not a complaint. Further the Superior Court cited two Rules that explicitly explain what a complaint must contain and how a complaint must be formatted, and included a link to a form complaint. (Doc. 13 at 12-13 citing Arizona Rule of Civil Procedure 5.2 and Rule 2.15 of the Maricopa County Local Rules).  Thus, it is clear the Superior Court concluded that what Plaintiff filed was his EEOC charge, not a "complaint" as defined by the Superior Court's Rules; and Plaintiff cannot create a disputed issue of fact that must be construed in his favor by disputing the Superior Court' ruling/conclusion.

In response to this argument, Defendant points out that what Plaintiff filed in Superior Court in July 2025 was a civil cover sheet and his EEOC charge, not a "pleading" under Federal Rule of Civil Procedure 7. (Doc. 12 at 4). The Court agrees that the Superior Court email rejecting Plaintiff's submission shows Plaintiff did not file a "complaint" which could qualify as a "pleading" that was defective. (Doc. 13 at 11-13).

In *Span v. Pinal County Community College District*, another court in this district permitted equitable tolling in a case where a complainant "timely filed an incorrect complaint in the correct forum." *Span*, No. CV-23-02233-PHX-JTT, 2024 WL 5090230, at *6 (D. Ariz. Dec. 12, 2024). The court concluded that "a promptly corrected filing defect by which Plaintiff filed a correct summons and civil cover sheet but an incorrect PDF of a complaint" is considered "a quintessential 'defective pleading' subject to equitable tolling." *Id.* However, the filing delay was only one day in *Span*. *Id.* Further, the "defective pleading" was a good faith effort at filing a complaint/pleading even though what was filed was defective because it was the wrong PDF.

Conversely, here Plaintiff did not attempt to "cure" the Superior Court's rejection of his first attempt at filing for over six months. Plaintiff's argument that he was working on curing his filings for those six months is not diligence. In other words, a prospective litigant cannot begin tolling a statute of limitations by submitting a document to Superior Court, that is not a pleading, as a six-month placeholder for a case he may file in the future. This result is bolstered by the fact that Plaintiff was made immediately aware that his attempted filing had been rejected and was not acting as a placeholder in Superior Court. For these reasons, Plaintiff's arguments that his July 31, 2025 filing "started" his case, and that his February 10, 2026 filing was a continuation of his case fails as a matter of law. The Superior Court, not Plaintiff, dictates whether a filing opens a case, and it was clear in July 2025 that no case had been opened.

Thus, the only question remaining is whether Plaintiff has shown he should be entitled to equitable tolling from December 4, 2025 (90 days after receipt of the EEOC notice) to February 10, 2026. Plaintiff's only argument in this regard is that he was

spending his time (starting in July 2025) trying to understand the Superior Court's filing system, based on the links and instructions provided to him by the Superior Court. Congress decided by setting a 90-day statute of limitations to file in court, that 90 days is a sufficient amount of time to file in court–even for someone who may not fully understand the court process. 42 U.S.C. § 2000e-5(f)(1). The Court finds no extraordinary circumstance that would entitle Plaintiff to an extra 68 days to understand the process. Plaintiff's pro se status alone does not warrant equitable tolling. *See*, *e.g. Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness.").

Further, Plaintiff's only allegation of diligence is his assertion that it took him over six months from the July 31, 2025 rejection email to understand how to file in Superior Court. Taking this allegation as true, Plaintiff is effectively arguing that his pro se status and resulting lack of understanding of Superior Court procedures should excuse missing the statute of limitations by over two months. The Court finds that a multiple months long confusion with no allegation that Plaintiff sought assistance from a lawyer, paralegal, pro bono legal program, librarian, or the Superior Court itself is not diligence that justifies equitable tolling. *Cf. Raspberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006) (a pro se filer's lack of legal sophistication, confusion, or ignorance of the law, does not warrant equitable tolling); *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013 (9th Cir. 2009) (ruling that a pro se filer's confusion, based on his own assumptions, does not excuse untimely filings).[7]

Based on the foregoing, the Court finds that Plaintiff's Title VII claim is barred by the statute of limitations and the motion to dismiss will be granted as to this claim.

---

[7] Plaintiff argues that the Superior Court's procedures regarding the fee deferral application created delays because it "required separate submission and approval before the complaint could be accepted for filing." (Doc. 13 at 2). To the extent that Plaintiff suggests the delay is due to the Superior Court's approval of his fee deferral application, the Court rejects that assertion. The Superior Court record indicates that Plaintiff filed his application for fee deferral on February 7, 2026, and the application was approved on February 9, 2026. (Doc. 1-1 at 14, 20). Plaintiff's application for fee deferral was filed after the statute of limitations expired, and the two-day delay does not explain Plaintiff's six-month delay.

**B.    Section 1981 Claim**

"A plaintiff seeking to enforce rights secured by § 1981 against a state actor must bring a cause of action under § 1983." *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023). Here, Plaintiff brought a § 1983 claim against the City, a municipal corporation, alleging that "Defendant, through policy, custom, and failure to act, violated Plaintiff's federally protected rights to equal contractual employment conditions" under § 1981. (Doc. 7 at 3).  The 18 quoted words in the preceding sentence are the totality of Plaintiff's allegations under this theory.  (*Id*.).

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *see also Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) ("A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.").

Generally under an unconstitutional policy theory, "[i]n order to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty*, 654 F.3d at 900 (cleaned up). A plaintiff bringing a *Monell* claim "may not simply recite the elements of a cause of action," but must plead "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F. 3d 631, 636 (9th Cir. 2007)

- 9 -

(internal quotation marks and citation omitted).

Here, Plaintiff alleged that between April 3, 2024 and May 16, 2024, Sgt. G. made several racially derogatory statements to Plaintiff, and that Plaintiff was treated differently than his coworkers because of his race. (Doc. 7 at 2–3). Plaintiff alleged that he "repeatedly reported these incidents but was met with retaliation," and thus that Defendant "knew or should have known of this conduct and failed to take corrective action." (Doc. 7 at 3). Plaintiff alleged that the discriminatory conduct "was severe, pervasive, and altered the terms, conditions, and privileges of Plaintiff's employment," and that "Plaintiff was forced to resign due to intolerable working conditions." (Doc. 7 at 3).

Defendant argues that Plaintiff's § 1981 claim should be dismissed because Plaintiff cannot establish municipal liability under *Monell*. (Doc. 12 at 7). Specifically, Defendant argues that Plaintiff has not identified the existence of an unlawful policy or custom, has not alleged deliberate indifference required to show a failure to train, and has not alleged that Sgt. G. possessed final policymaking authority such that his actions amount to a policy. (Doc. 12 at 8–11).   Because Plaintiff merely pleads a conclusion as the totality of his § 1981/ § 1983 allegations, Plaintiff fails to state a claim as a matter of law.  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss.").

More specifically, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiff alleges that Defendant violated Plaintiff's rights "through policy, custom, and failure to act." (Doc. 7 at 3). Plaintiff does not identify an explicit discriminatory City policy, and the City has policies expressly prohibiting discrimination and harassment in the workplace.[8] (Doc. 7 at 3; Doc. 12 at 7, 9–10; Doc. 12-1 at 11–21;

---

[8] The Court takes judicial notice of the City's Charter, Code, and Administrative Regulations as matters of public record. (Doc. 12-1 at 6–21); *see Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir.1977) ("[C]ity ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice."). The Court may take judicial notice of a fact "not subject to reasonable dispute in that it is capable of

Doc. 14 at 7). Although Plaintiff cannot point to a specific unlawful City policy, in his response to the motion to dismiss, Plaintiff argues that he has plausibly alleged "deliberate indifference and a custom of non-enforcement" because he claims to have "repeatedly reported" the incidents but was discouraged from reporting and retaliated against. (Doc. 13 at 8–9; Doc. 7 at 3).

The Court will not try to recast Plaintiff's allegation as a legal cause of action. Indeed, "[i]t is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." *Gibson v. City of Portland*, 165 F.4th 1265, 1289 (9th Cir. 2026). The Court does not know if Plaintiff intended to: pursue a theory of failure to train, pursue a theory of failure to supervise, attempt to cast Sgt. G.'s actions as those of a final policy maker, allege a specific policy, allege a specific practice, or allege a specific custom of discrimination.

By way of example, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 388. "Similarly, a failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.'" *Dougherty*, 654 F.3d at 900 (quoting *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989)). "Mere negligence in training or supervision, however, does not give rise to a *Monell* claim." *Id.* Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

Defendant argues that Plaintiff has not alleged facts sufficient to show deliberate indifference. (Doc. 12 at 8–9; Doc. 14 at 9). Specifically, Defendant argues that Plaintiff "fails to identify to whom any such report was made," thus Plaintiff "does not plausibly allege that the City was aware of the alleged conduct, much less that it acted with deliberate indifference to the conduct." (Doc. 14 at 9).

---

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

The Court agrees that Plaintiff has not alleged facts that would rise above negligence to the level of deliberate indifference on behalf of the City. Plaintiff alleges that the discrimination occurred over the course of one or two months. (Doc. 7 at 2). Plaintiff claims he "repeatedly reported" the incidents, but he does not plead when or to whom he reported the incidents. Even if Plaintiff could show that he reported the incidents to someone, Plaintiff also fails to show that those reports were communicated to the City and that the City was deliberately indifferent in not taking action to enforce its policies in that short period of time. Moreover, Plaintiff's allegations of repeated incidents between himself and Sgt. G. are isolated incidents in that the moving force behind the alleged harassment was Sgt. G., not the City's policy or custom. *See Connick*, 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (noting that the "deliberate indifference" standard for claims of inadequate training also applies to claims of inadequate supervision).

Thus, even attempting to tie Plaintiff's factual allegations to his 18-word conclusory legal theory, Plaintiff fails to state a claim for failure to train or failure to supervise.

By way of further example, Plaintiff argues that a single incident may support *Monell* liability. (Doc. 13 at 8). Defendant argues that while a single incident can trigger *Monell* liability, the single act must be committed by an official with final policymaking authority. "A section 1983 plaintiff may establish municipal liability" by showing that "the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). "The official must also be responsible for establishing final governmental policy respecting such activity before the municipality can be held liable." *Id.* at 482–83. The U.S. Supreme

Court gave the example that "the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policies," and in that case, "the Sheriff's decisions respecting employment would not give rise to municipal liability." *Id.* at 483 n.12. "[W]hether an official had final policymaking authority is a question of state law." *Id.* at 483.

Defendant argues that Plaintiff cannot establish that Sgt. G. had final policymaking authority because the City's Charter provides that the City Manager is the only final policymaker for personnel matters, and Sgt. G.'s alleged discriminatory conduct was expressly prohibited by the policies adopted by the City Manager. (Doc. 12 at 9–10; Doc. 12-1 at 7–9). Plaintiff does not meaningfully dispute that Sgt. G. is not a final policymaker. (Doc. 13 at 7). Because Sgt. G. is not a final policymaker responsible for establishing City employment policies, Sgt. G.'s alleged discriminatory actions would not give rise to municipal liability under *Monell*.

Finally, Plaintiff's conclusory allegation that "through policy, custom, and failure to act, [the City] violated Plaintiff's federally protected rights to equal contractual employment conditions" fails to allege a specific policy or specific custom that could form the basis for *Monell* liability in this case. And, as discussed above, Plaintiff has failed to allege that any failure to act was deliberately indifferent; and thus, he too fails to state a claim on this theory.

For all of the foregoing reasons, the Court finds that Plaintiff has not alleged facts sufficient to establish municipal liability under *Monell*. Therefore, Defendant's motion to dismiss Plaintiff's § 1981 claim will be granted.

**C.    Leave to Amend**

Next, the Court must consider whether to grant Plaintiff leave to amend the complaint for a second time. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the

deficiency."). However, "[l]eave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538. Further, futility alone justifies denying leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Here, Plaintiff filed a complaint, reviewed Defendant's motion to dismiss, and filed an amended complaint to attempt to address the deficiencies identified by Defendant. Thus, Plaintiff has already exercised his matter-of-course amendment and failed to cure the deficiencies identified in the first motion to dismiss.

Further, with respect to the Title VII claim, the Court finds any amendment would be futile because Plaintiff relies, primarily, on his theory that his July 31, 2025 filing "started" this case. The Court has rejected that argument and no additional facts will change that conclusion.

With respect to the § 1981 claim, the Court also finds leave to amend would be futile. The City's Charter, Code, and Administrative Regulations (of which the Court has taken judicial notice) do not contain a "policy" of racial discrimination and Plaintiff cannot plausibly allege otherwise. Plaintiff cannot plausibly allege in the face of the City charter that Sgt. G. was the final policy maker; thus, Sgt. G's individual actions cannot be the custom or policy necessary for municipal liability. Finally, Plaintiff cannot allege a citywide custom or practice based on the individual acts against one employee by another employee. Plaintiff's two complaints, his response to the motion to dismiss, and his charge with the EEOC do not allege acts beyond those of one individual; thus, Plaintiff cannot make different allegations consistent with his first two complaints. As a result, the Court finds Plaintiff cannot cure by amendment. This conclusion is bolstered by the fact that, as discussed above, Plaintiff has already amended, and responded to Defendant's motion to

dismiss, and still has not identified any policy, practice or custom under which Sgt. G. was acting.

Additionally, although Plaintiff asks for leave to amend, he fails to comply with Local Rule Civil 15.1, by failing to attach his proposed amended complaint; accordingly, the motion is procedurally deficient. For all of the foregoing procedural and substantive reasons, Plaintiff's request for leave to again amend the complaint is denied. (Request for leave to amend is at: Doc. 13 at 9).

**IV.    CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion to Dismiss the First Amended Complaint (Doc. 12) is granted, and the Clerk of the Court shall enter judgment accordingly.

Dated this 29th day of April, 2026.

James A. Teilborg
Senior United States District Judge